[Civ. No. 5181. Third Appellate District.—December 24, 1934.]

JOHN C. BETTENCOURT et al., Respondents, v. M. E. OLIVERIA, Appellant.

J. Hampton Hoge for Appellant.

Whitehurst & Logan and E. H. Zion for Respondents.

THOMPSON, J.—The defendant Oliveria has appealed from a judgment of $2,163.50 which was rendered in an automobile casualty case jointly against him and his co-defendant John Carvalho for personal injuries sustained by Virgil Bettencourt, a minor, while riding with the appellant in his truck. A collision of the respective machines which were operated by the two defendants occurred at the intersection of the Crows Landing Road and the River Road in Stanislaus County. The cause was tried by the court sitting without a jury. Both defendants were held to be guilty of gross concurrent negligence. Carvalho has not appealed. The appellant contends the evidence does not support the findings and judgment to the effect that he was guilty of gross negligence.

We are of the opinion the evidence sufficiently supports the findings and judgment that the appellant was guilty of gross negligence which proximately contributed to the injuries sustained by the minor child, Virgil Bettencourt. We may assume he was riding with the appellant as his guest. The evidence is conflicting, but there is substantial proof of the following facts: Crows Landing Road is a main traveled paved highway extending approximately east and west at the point of the accident. The River Road, which was surfaced with gravel, crossed the Crows Landing highway at a right angle at the point where the accident occurred. The appellant lived on the River Road some distance north of its intersection with Crows Landing highway. At 7:30 o'clock P. M. of June 11, 1931, he was driving his Dodge truck southerly along the River Road toward the intersection of that road with the Crows

Landing highway. Some time before he reached the intersection of these roads, he picked up his young daughter and the plaintiff, Virgil Bettencourt, a seven year old boy. All three of the occupants of the truck sat in the seat inclosed with a cab which obscured their view to the right or to the left without leaning forward to escape that obstruction. Oliveria was familiar with that intersection of the roadways, and knew the approach to Crows Landing highway was dangerous because there was a "great deal of traffic" thereon. Crows Landing highway is sixty-six feet in width, with a seventeen-foot paved strip along the center thereof. It was practically straight for a long distance on either side of the River Road crossing. There was a four-foot fence and a line of tall weeds paralleling the fence within two feet therefrom, extending along the northerly side of Crows Landing highway on the east side of the River Road.

The defendant Carvalho was driving his Dodge coupe along Crows Landing highway from the east toward the intersection of the River Road at the rate of approximately 45 miles an hour. He did not see the truck which was driven by Oliveria until it reached a point about 35 feet from the paved portion of Crows Landing highway. Carvalho testified that Oliveria was then driving his truck at the rate of "about 35 miles (an hour), more or less". Carvalho was then unable to avert the collision which occurred at the northerly edge of the paved portion of Crows Landing highway.

The appellant testified that he stopped his truck "10 or 12 feet from the highway, . . . the pavement, concrete". He said that he looked both to his right and to his left but saw no approaching machine. He claimed that he could then see a distance of about 140 feet down Crows Landing highway to his right, but his evidence is conflicting in that regard. When he was asked why he had not seen the approaching machine he replied: "By the time that I could get a clear view of the highway, . . . my front wheels would almost have to be on the pavement, and then that truck I had, had the doors up high, and on the side here, there is a partition there, which, as you drove onto the highway, it would keep cutting off the view." The engineer who took the measurements for the drawing of the diagram which was received in evidence testified that from a point on the

River Road situated ten feet from the pavement where Oliveria said that he stopped his machine there is an unobstructed view easterly along Crows Landing highway for a distance of 913 feet, and from a point 15 feet from the pavement there is a clear view of 315 feet in the same direction. It was broad daylight. There were no other vehicles to obstruct a clear view of the highway at that time. It is therefore a reasonable conclusion for the court to have reached that Oliveria did not stop his truck and look to his right at the point where he said that he did so, or he would have seen the approaching car of Carvalho which must have been within the radius of his vision.

In conflict with this testimony of Oliveria respecting the point where he said that he stopped his truck, Mr. Delnero testified that he observed the appellant stop his truck 35 or 40 feet ''from the north edge of the highway''. Oliveria admits that he did not again look for approaching vehicles after he stopped his truck. He says that he did not see the automobile of Carvalho until it struck his machine and hurled it off the highway. He said that he placed his clutch in low and that he was traveling only about 5 miles an hour when his truck was struck. Both machines were demolished.

Owing to the conflict of evidence, in support of the judgment we must assume that the appellant stopped his truck at a point 35 or 40 feet north of the intersection of the River Road with Crows Landing highway; that he knew this was a dangerous crossing; that he was operating his truck from an inclosed cab which obscured his view; that it was useless for him to look for approaching vehicles along Crows Landing highway, from the point where he stopped his truck 35 or 40 feet from the pavement, for the reason which he himself furnished, that the fence and line of tall weeds adjacent thereto obstructed his view of the Crows Landing highway, and that he deliberately drove upon the intersection of those roadways without even attempting to thereafter look for approaching vehicles. This is sufficient evidence of gross negligence on the part of the appellant to support the findings and judgment of the court.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.